**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JEANINE BRUNO and MICHELLE GREGG, on behalf of themselves, and all others similarly situated,**

**Plaintiffs,**

**v.** **CASE NO.:**

**C2 TECHNOLOGIES, INC.,**

**Defendant.**
**________________________________/**

**CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

Named Plaintiffs, Jeanine Bruno ("Plaintiff Bruno") and Michelle Gregg ("Plaintiff Gregg") (Plaintiff Bruno and Plaintiff Gregg are referred to collectively as "Named Plaintiffs") on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), file this Class Action Complaint against Defendant, C2 Technologies, Inc. ("Defendant") for violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). In further support thereof, the Named Plaintiffs allege as follows:

**NATURE OF THE ACTION**

1. This is a class action for the recovery by the Named Plaintiffs, on their own behalf and on behalf of over 100 other similarly situated former employees, seeking to recover damages in the amount of 60 days' compensation and benefits for each of them by reason of the Defendant's violation of their rights under the

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. (the "WARN Act").

2. Plaintiffs were employees of Defendant who were terminated without cause on their part on or about March 6, 2026 or within thirty (30) days thereof, as part of or as the reasonably expected consequence of a mass layoff or plant closing, which was effectuated by Defendant on or about that date.

3. Defendant failed to provide Plaintiffs with the sixty (60) days advance written notice that is required by the WARN Act. In fact, Defendant provided Plaintiffs with only around four (4) days of advance notice.

4. Defendant's mass layoffs deprived Plaintiffs "…and their families [of] some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

5. Plaintiffs are entitled under the WARN Act to recover from the Defendant their wages and benefits for 60 days.

6. Defendant will likely claim exemption from this requirement under the "unforeseeable business circumstance" exception of the WARN Act and possibly cite to loss of a contract.

7. Under that exception, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff

is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

8. However, Defendant was still mandated by the WARN Act to give Plaintiffs "as much notice as is practicable." Defendant failed to do so here, instead giving Plaintiffs as little as four (4) days of advance notice.

9. Additionally, on or around November 3, 2025, Plaintiff Bruno sent an email to Defendant including the Technical Director for the "RRL contract," Ravi Garimella, and team lead, Justin Bradley (who was also laid off), inquiring about the status of the company, in light of a particular contract coming to an end.

10. Specifically, Plaintiff Bruno asked the following:

> This contract is ending. Normally when the contract ends, they start rotating people to the new contract, if they have one. If they do not, they have to start letting people go. Does I3 have another contract they intend to subcontract us with? Or has C2 obtained their own RRL ... that they intend to roll us over to, or even know how much longer of the contract? It's the nature of these contract[s], but I want to be prepared without panicking people in a meeting. So, I just need some transparency to best determine if I need to find something else, when I should start looking, or if I don't need to worry about it at all and we'll just be shifted when the time comes.

11. It is clear that at least as of November 3, 2025, Defendant had knowledge that the contract was ending, as even Plaintiff Bruno had this knowledge.

12. Accordingly, Defendant cannot assert that the ending of this contract was an unforeseen business circumstance.

13. However, instead of providing advance notice of future layoffs to Plaintiffs at this time, Defendant responded to Plaintiff Bruno, asking: “Where did you hear this from?” – seemingly, displeased that Plaintiff Bruno had this information.

14. Defendant’s terminations of Plaintiffs were not due to any unforeseeable business circumstances, as Defendant was not suffering any sudden, dramatic, or unexpected conditions outside of its control.

15. To the contrary, Defendant was well aware, as early as November 2025, that this particular contract was ending and that terminations were imminent.

16. Yet, instead of providing Plaintiffs with notice at this time (four months prior to Plaintiffs’ layoffs) or even providing Plaintiffs with the requisite sixty (60) days’ notice, Defendant provided Plaintiffs with only four (4) days’ notice.

17. Defendant’s failure to provide employees with the legally required advance written notice, mandated by the WARN Act, is a particularly egregious violation because it is clear from Plaintiff’s November 2025 inquiry that Defendant was aware of the likelihood of terminations four (4) *months* in advance of the terminations, yet provided Plaintiffs with only four (4) *days*’ notice of the terminations.

18. Defendant was not experiencing any conditions which would have prevented it from being able to provide Plaintiffs with sixty (60) days' notice, prior to its mass layoff of them.

19. A similarly situated employer exercising reasonable judgment would have ensured its ability to provide Plaintiffs with notice of their terminations well in advance of sixty (60) days prior to their termination.

## JURISDICTION

20. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

21. The violation of the WARN Act alleged herein occurred within this District.

22. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

23. Defendant is a Virginia corporation, authorized to operate in the state of Florida. Defendant also operates an office in Orlando, Florida.

24. Defendant describes itself as "a global powerhouse, dedicated to offering products, services, and solutions that provide human performance improvement … through the seamless integration of emerging technologies, digital transformation, and unparalleled potential of human talent."[1]

---

[1] About Us, C2 Technologies, Inc., https://www.c2ti.com/about-us/ (last visited August 10, 2026).

25. At all times relevant to this action, the Technical Director for the RRL contract, Ravi Garimella, was based in Defendant's headquarters in Virginia and the employees who worked the RRL Contract were remote employees that reported to Director Garimella and/or received their work assignments from the Virginia office.

26. Prior to her termination, Named Plaintiff Gregg was an employee of Defendant.

27. Named Plaintiff Gregg worked from home in Ocala, Florida, but reported to Defendant's Virginia office and/or received her work assignments from the Virginia office.

28. Prior to her termination, Named Plaintiff Bruno was an employee of Defendant.

29. Named Plaintiff Bruno worked from home in Pierson, Florida, but reported to Defendant's Virginia office and/or received her work assignments from the Virginia office.

30. On or around March 2, 2026, Plaintiffs were notified that their employment was being terminated, without cause on their part, by the Defendant, effective March 6, 2026.

31. On March 6, 2026, or within thirty (30) days thereof, and thereafter, the Named Plaintiffs and over one-hundred (100) other employees of the Defendant were terminated without cause on their part as part of or as the

reasonably expected consequence of the terminations that occurred on or about March 6, 2026, or within thirty (30) days thereof.

32. Named Plaintiffs bring this action on their own behalf and, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the Putative Class Members.

**THE MASS LAYOFF / PLANT CLOSURE**

33. On March 2, 2026, or within thirty (30) days thereof, the Named Plaintiffs—who worked for Defendant remotely, but reported to Defendant's Norfolk, Virginia headquarters (the "Facility")—and the Putative Class Members learned for the first time that Defendant was terminating their employment, effective March 6, 2026.

34. Defendant has no excuse for failing to comply with the WARN Act's 60-day notice requirement as to the Named Plaintiffs and the Putative Class Members.

35. In fact, the only written notice received by the Plaintiffs from Defendant came in the form of a letter sent by email, four (4) days prior to their termination (with no offer of a severance package), which failed to comply with the WARN Act's notice requirements.

36. The letter stated, in part:

> We are writing to inform you that there will be a mass layoff within C2 Technologies, on March 6, 2026.
>
> This layoff is due to unforeseen business circumstances. The company first became aware on March 2, 2026, that

> funding supporting C2's work scope was insufficient to maintain current staffing levels, resulting in a permanent mass layoff.

37. Defendant's purported reason for the layoffs was unforeseen business circumstances—namely, insufficient funding—which the email correspondence from November 2025 directly contradicts, as Plaintiff Bruno raised questions at that time about this very issue of funding, due to the contract ending, specifically inquiring as to whether layoffs would occur.

38. At least as of November 2025, Defendant was well aware of this issue, yet failed to communicate the inevitable layoffs at that time, instead, waiting until four (4) days prior to the layoffs to inform Plaintiffs of them.

39. At a minimum, WARN Act notices must contain: (i) the name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information; (ii) a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (iii) the expected date of the first separation and the anticipated schedule for making separations; and (iv) the job titles of positions to be affected and the names of the workers currently holding affected jobs.

40. The notice that Plaintiffs received from Defendant as to their terminations contained none of the information outlined above. Thus, to date, Plaintiffs have never received a compliant WARN Act notice.

## THE CLAIM FOR RELIEF

41. At all relevant times, Defendant employed 100 or more employees, exclusive of part-time employees, *i.e.,* those employees who had worked fewer than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given (the "Part-Time Employees"), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

42. The terminations on or about March 6, 2026, or within thirty (30) days thereof, of the employment of persons who worked at the Facility for Defendant resulted in the loss of employment for over one hundred (100) employees, excluding Part-Time Employees.

43. The terminations on or about March 6, 2026, or within thirty (30) days thereof, of the employment of persons who worked at the Facility or as the reasonably foreseeable consequence of those terminations resulted in the loss of employment for at least 33% of the Facility's employees excluding Part-Time Employees.

44. The Named Plaintiffs and the Putative Class Members were discharged without cause on or about March 6, 2026, or within thirty (30) days thereof, or thereafter as the reasonably expected consequence of the terminations that occurred on or about March 6, 2026, or within thirty (30) days thereof.

45. The Named Plaintiffs and each of the other Putative Class Members experienced an employment loss as part of or as the reasonably expected consequence of the mass layoff and/or plant closing that occurred on or about March 6, 2026, or within thirty (30) days thereof.

## CLASS ACTION ALLEGATIONS

46. The Named Plaintiffs and the Putative Class Members constitute a Class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

47. Specifically, the Named Plaintiff seeks to certify the following class:

**C2 Technologies WARN Act Class Action:**

> All former employees of Defendant throughout the United States not given a minimum of 60 days' written notice of termination, and whose employment was terminated on or about March 6, 2026, or within thirty (30) days thereof, as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

48. Each of the Putative Class Members is similarly situated to the Named Plaintiffs with respect to his or her rights under the WARN Act.

49. Common questions of law and fact are applicable to all members of the Class.

50. The common questions of law and fact arise from and concern the following facts, among others: that all Putative Class Members enjoyed the protection of the WARN Act; that all Putative Class Members were employees of the Defendant who worked at or reported to the Facility; that the Defendant

terminated the employment of all the members of the Class without cause on their part; that the Defendant terminated the employment of Putative Class Members without giving them at least 60 days' prior written notice as required by the WARN Act; that the Defendant failed to pay the Putative Class Members wages and to provide other employee benefits for a 60-day period following their respective terminations; and on information and belief, the issues raised by any affirmative defenses that may be asserted by the Defendant.

51. The Named Plaintiffs' claims are typical of the claims of the other members of the Class in that for each of the several acts of Defendant described above, the Named Plaintiffs and the other Putative Class Members are injured parties with respect to their rights under the WARN Act.

52. The Named Plaintiffs will fairly and adequately protect and represent the interests of the Class.

53. The Named Plaintiffs have the time and resources to prosecute this action.

54. The Named Plaintiffs have retained the undersigned counsel who have had extensive experience litigating WARN Act claims, employee rights claims, and other claims in federal court.

55. The Class is so numerous as to render joinder of all members impracticable in that there are approximately 300 members of the Class.

56. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

57. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

58. No Putative Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

59. No litigation concerning the WARN Act rights of any Class Member has commenced.

60. Centralizing all the potential litigation concerning the WARN Act rights of the Putative Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties, and is the most efficient means of resolving the WARN Act rights of all the Putative Class Members.

61. On information and belief, the names of all the Putative Class Members are contained in Defendant's books and records.

62. On information and belief, a recent residence address of each of the Putative Class Members is contained in Defendant's books and records.

63. On information and belief, the rate of pay and the benefits that were being paid or provided by Defendant to each Class Member at the time of his or her termination are contained in Defendant's books and records.

64. As a result of Defendant's violation of the WARN Act, each Putative Class Members is entitled to recover an amount equal to the sum of: (a) his/her respective wages, salaries, commissions, bonuses and accrued pay for vacation and personal days for the work days in the 60 calendar days prior to their respective

terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) his/her medical expenses incurred during the 60-day period following their respective terminations that would have been covered and paid under the Defendant's health insurance plan had that plan provided coverage for such period.

65. Defendant failed to pay the Named Plaintiffs and the other Putative Class Members for the Defendant's violation of the WARN Act in an amount equal to the sum of or any part of the sum of (a) their respective wages, salary, commissions, bonuses and accrued pay for vacation and personal days for the work days in the 60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) their medical expenses incurred during the 60 calendar days from and after the date of his/her termination that would have been covered under the Defendant's benefit plans had those plans remained in effect.

66. The Named Plaintiffs hereby demand a jury trial of all issues that may be so tried.

***WHEREFORE***, the Named Plaintiffs demand judgment as follows:

A. In favor of the Named Plaintiffs and each Putative Class Members against the Defendant equal to the sum of: (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for 60 days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for 60 days; and (c) medical expenses incurred during the 60 day period following

their respective terminations that would have been covered and paid under the Defendant's health insurance plans had coverage under that plan continued for such period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A).

B. Appointment of the Named Plaintiffs as Class Representatives;

C. Appointment of the undersigned as Class Counsel;

D. In favor of the Named Plaintiffs for the reasonable attorneys' fees and the costs and disbursements of prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104 (a)(6).

E. Interest allowed by law;

F. Such other and further relief as this Court deems just and proper.

Dated this 11th day of August, 2026.

Respectfully submitted,

*/s/Brandon J. Hill*

**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Main No.: 813-224-0431
Direct No.: 813-379-2565
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

Eric Lechtzin (*pro hac vice* anticipated)
EDELSON LECHTZIN LLP
411 S. State Street
Suite N-300
Newtown, PA 18940
Phone: (215)-867-2399
Email: elechtzin@edelson-law.com

***Attorneys for Named Plaintiffs***